904 F.2d 702
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Anthony TAYLOR, a/k/a Joseph Louis Garro, Defendant-Appellant.
 No. 88-5134.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 7, 1989.
Decided: May 22, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-87-91-R).
 Lance Mitchell Hale, King, Fulghum, Snead & Hale, P.C., Roanoke, Va., argued, for appellant.
 Jennie L. Montgomery, Assistant United States Attorney, Roanoke, Va., for appellee; John P. Alderman, United States Attorney, Roanoke, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 The defendant Taylor, in company with Robert Tindle, robbed a branch of the United Virginia Bank in Roanoke, Virginia, on July 20, 1987. Tindle testified for the government under a plea bargain agreement. Taylor was convicted; he appeals, and we affirm.
 
 
 2
 Taylor and Tindle accomplished their robbery in daylight, Taylor entering the bank and Tindle driving the get-away car. They made good their escape and telephoned Taylor's girl, Tina Julian, in Richmond to advise her of their coming. From Richmond, the three headed south through North and South Carolina, Georgia and Florida. The bank robbery in Roanoke was only one of several bank robberies they accomplished on this journey. Following Taylor's arrest, Miss Julian and an accomplice attempted to deliver Taylor from the hands of the United States Marshal and were shot for their efforts by the Marshals. Miss Julian died from those wounds. Quite naturally, the attempted delivery and killing of Miss Julian attracted considerable attention in the vicinity of Roanoke, where the trial was to be held.
 
 
 3
 At trial, Taylor's defense was alibi and lack of identification. He persists in his defense of lack of identification, even on appeal.
 
 
 4
 At the trial, the district court did not give an instruction frequently given telling the jury that the side with the greater number of witnesses is not necessarily more believable, and exception is taken to this omission. While it would have been better had the instruction complained of been given, the court instructed the jury to consider the testimony of all the witnesses, regardless of who may have called them. In the circumstances of this case, we are of opinion the omission complained of was not reversible error.
 
 
 5
 The objection of the defendant to an instruction telling the jury it could consider convictions of felony as going to the credibility of a witness is without merit, because the instruction was applicable to the witness Tindle, and, had it not applied to Tindle, its giving would have been harmless.
 
 
 6
 Although the defendant may be said to complain in his brief of the failure of the district court to grant a change of venue on account of the publicity resulting from the attempted delivery of the prisoner and subsequent proceedings, we believe his brief actually complains of the failure of the district court to inquire from time to time during the trial as to the effect of any publicity and ensuing publicity. We say this because of the complaint in the brief of "ensuing in-trial publicity" and that the district court "failed to take the necessary in-trial examination of the jury," and Taylor's crediting the district court with "an adequate voir dire examination." The district court instructed the jury, however, to decide the case wholly on the evidence in the courtroom and further instructed it not to read the newspapers or listen to the other communications media with respect to the trial. There is no indication any juror violated this instruction. No inquiry was made by either side during the trial as to any violation thereof, and there is no indication now or then of any such violation. We are thus of opinion this aspect of the trial is free from error.
 
 
 7
 The testimony of FBI Agent Burke concerning an FBI number of the defendant was quite innocuous because no evil inference was sought from the fact that Taylor did in fact have an FBI number. We take judicial notice that substantial numbers in the population who do have FBI numbers are free from crime or other bad repute. They have been exposed to the FBI only because of security clearance or like occurrence. The identification testimony of a Nassau County, New York, police officer likewise was without prejudice to Taylor, for no evil inference was sought therefrom.
 
 
 8
 Taylor also assigns as error the proof of his bad acts subsequent to the Roanoke bank robbery. It should be remembered that Taylor, Tindle and Miss Julian left Richmond together after the Roanoke robbery and headed south. While in Florida, Tindle and Taylor robbed a bank in Daytona and also robbed a bank in Kingsland, Georgia. There may have been a third robbery in this southern series. Neither the record nor either brief is clear on this point. In any event, the district court admitted evidence that Taylor and Tindle robbed together the banks in Florida and Georgia. The objection is made that such is not admissible under Federal Rule of Evidence 404(b), which excludes evidence of other crimes or bad acts to prove the character of a person in order to show he has acted in conformity therewith. The rule provides, however, that such evidence may be admissible for other purposes, among which is "proof of ... identity." Because Taylor has insisted even through this appeal that he was not the man who robbed the Roanoke bank, identity is an issue in this case. When Taylor claimed an alibi for the Roanoke robbery and that Tindle was the man who robbed the Roanoke bank, he has made proof of his companionship with Tindle in the Florida and Georgia robberies admissible as to his identity, for it is "evidence having any tendency to make the existence of any fact ... more probable ... than it would be without the evidence." Federal Rule of Evidence 401.
 
 
 9
 We are also of opinion there is sufficient evidence of Taylor's identity to sustain the finding of guilt.
 
 The judgment of conviction is accordingly
 
 10
 AFFIRMED.